## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | 3:25MJ320 |
| HEATHER MORROW | ) | |
| _____ | ) | |

## MOTION FOR DISCOVERY AND FOR AN ORDER REQUIRING THE GOVERNMENT TO REQUEST AND PRESERVE BRADY MATERIAL

Defendant, pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) and Fed. R. Crim. P. 16(a)(1)(E)(1), moves this Court to order Government witnesses to preserve evidence, to produce it to the Government, and for the Government to produce it to the Defense. Alternatively, she asks for an order commanding the Government to order Government witnesses to preserve the evidence and turn it over to the prosecution. The Defense requests that the Court hear this motion at her initial hearing on December 17, 2025.

The affidavit submitted by FBI Special Agent Michael Gregory included his sworn affirmation that the narrative in support of the complaint was based on detailed and consistent statements made by numerous but unnamed ICE deportation agents who were eyewitnesses to and victims of the felony assault alleged in the complaint. Prior to a preliminary hearing on the complaint, the Defense voluntarily provided the Government with a video recorded by a bystander. That video proved that each of the alleged 'consistent narratives' was false, and therefore, the complaint was dismissed. Because the inconsistences in the bystander video with the sworn affidavit by federal law enforcement show a likelihood of collusion, a preservation order is necessary to prevent the possible destruction of exculpatory evidence.

The Defense has requested both the preservation of evidence, and has

yet to receive any response. The Defense is not otherwise able to obtain the matter through subpoena because the Government has not disclosed the names of the deportation agents. The Defense seeks relief through the Court based on the possibility that requested evidence could otherwise be deleted or automatically deleted if not immediately preserved.

## Statement of Facts

### A. The criminal complaint.

1. On November 17, 2025, in case 3:25MJ305, this Court, relying on the truthfulness of law enforcement officials, authorized the issuance of a criminal complaint against Defendant Heather Morrow. FBI Agent Michael Gregory verified the complaint as true and accurate.

2. Special Agent Gregory was not a witness to any of the alleged conduct. Instead, he relied upon federal agents to provide him with a truthful account. He averred, "the information contained in this affidavit is the result of my own investigation, or it has been provided to me by other law enforcement authorities whom I believe to be reliable."

3. He stated that the conduct took place on November 16, 2025, at an ICE deportation facility in Charlotte, North Carolina. He stated that Morrow and others were blocking the entrance to the facility. As a result, an unnamed deportation agent, listed as DO2, told Morrow that he would pepper spray her if she did not move.

4. He further stated that a fellow protester (Protestor 2) then ran up to DO1's vehicle and "hit the window with a closed fist."

5. Deportation agents then attempted to place Protestor 2 into custody. They alleged that he resisted officers by not immediately putting his hands behind his back.

6. Gregoy averred that, while deportation officers were taking that Protestor 2 into custody, DO1 felt "jolted" by Morrow "grabbing his shoulders."

7. Two separate deportation agents, DO2 and DO4, claimed that Morrow "grabbed DO1's shoulders from behind and appeared to be

attempting to pull DO1 away from [Protestor 2].".

8. DO4 went further with his statements to Agent Gregory. He stated that he witnessed Morrow "attempt to jump on the back of DO1 by placing both of her hands on DO1's shoulders while she had one foot off the ground."

9. DO4 continued, stating that he feared for DO1's safety, and rushed to grab Morrow off DO1's shoulders."

10. DO4 then "took her to the ground."

11. Morrow was then arrested, taken to the FBI field office, and then the Gaston County Jail. She was released at her initial appearance on the complaint. The complaint alleged a felony assault on law enforcement.

12. The Government then issued a press release, which remains on its website, stating that, among other things, "Morrow approached the officer from behind and forcibly made physical contact with him, including grabbing the officer's shoulders and attempting to jump on the officer's back." Morrow was suspended from her job as a result of the complaint and press release.

13. A federal grand jury convened the week of November 17, 2025. The Defense discussed the case with the United States Attorney's Office prior to presentation to a grand jury.

14. At this point, the Government stated that deportation agents had checked for video, and none of the actions were captured by the cameras at the deportation building, and were unaware of a video recording from a bystander that did capture the encounter..

15. The Defense informed the Government that it believed the allegations in the complaint were provably false. The Defense voluntarily provided the Government with a copy of the video prior to a scheduled preliminary hearing.

16. The Government dismissed the complaint prior to the preliminary hearing.

## B. *The new charges.*

17. The Government then charged four separate misdemeanors on November 16, 2025, stemming from the same alleged conduct.

18. Those are now before the Court.

19.    The Defense has requested discovery on a number of occasions, and has requested that the Government take precautionary actions to ensure that *Brady* evidence is not destroyed or properly preserved.  *See* Discovery Request Exhibit..

20.    The Defense remains concerned that agents will delete or fail to preserve text messages, if they have not done so already.

## C. What the tape shows:

21.     The Defense provided video footage of the incident to law enforcement.

22.    The footage appears to begin with DO4 telling the protesters to 'get the fuck out of the way."

23.    A protester asks the deportation agents for their name and badge number.

24.    The video shows the second protester in front of an ICE van.  At no point does the individual "hit the window with a closed fist," or come anywhere close to the same.

25.    The video then shows DO1 yell, "come here mother fucker!" to the

26.    Alarmingly, the video shows that Morrow **never grabbed the agent by the shoulders and never pulled him backward**.

27.    The video does not show Morrow beginning to "leap on the back of DO1."

28.    The video does not show her moving her weight to one foot in an effort to potentially take flight and leap on his back.

29.    What it does show is physical contact where Morrow briefly grabs DO1's wrist at the same time as DO4 levels  her "to the ground."

30.    Clearly, the preservation of any and all electronic communications, but also audio and/or video recordings leading up to the encounter, the encounter itself and recordings in the aftermath of the encounter, are crucial to the administration of justice.

31.    Because the agents in question are impossible to identify, in part because their current uniform includes facemasks and does not include identification badges or names, it is crucial that the government assure this court that all evidence from each and every agent involved be preserved.  The Defense further understands that

the agents are not local.

## Legal Framework

Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87,  Prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).

The Government should also produce any information tending to discredit or impeach any government witness. *Giglio v. United States,* 405 U.S. 150, 154-55 (1972); *Chavis v. North Carolina,* 637 F.2d 213 (4th Cir., 1980).

The Justice Manual, at § 9-5.001(B)(2) notes that this obligation includes the entire prosecution team, which "include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." (Citing *Kyles* at 437).

Finally, Fed. R. Crim. P. 16(a)(1)(E)(i) provides that, upon request, the Government must provide the Defendant the opportunity to examine any material documents in its possession.

## Analysis

Deportation agents provided statements to Special Agent Gregory for the purpose of seeking felony assault charges against Defendant Morrow.  These agents knew that the statements would be provided to the Court.  Special Agent Gregory provided in his affidavit that he reasonably relied on the statements of law enforcement officers that he believed were truthful.

The deportation agents provided consistent statements. Each statement alleged that Morrow had grabbed onto the back of DO1 by his shoulders. Some deportation officers provided additional flourishes, such as DO1 feeling a "jolt" on his shoulders, or statements that Morrow appeared to be pulling DO1 backward, and that Morrow was beginning to leap off of one foot as she pulled back on the agent.

None of these statements were based in fact. Morrow did no such thing.

The remarkably consistent, but false, statements by the deportation agents strongly suggests that their statements were coordinated. It is also noteworthy that agents believed that there was no visual proof of what happened because the cameras at the deportation office did not record the incident.

In addition, deportation agents have already lost property associated with the case, further demonstrating the need for court intervention. When asked, the agency indicated that property may have inadvertently been sent out with a deportee.

Because of the likelihood of collusion, the Defense previously requested, and continues to request:

- That the U.S. Attorney's Office instruct the case agent, as well as all Government witnesses, to preserve and provide to the prosecution all communications related to the case. This includes any text messages, in-app messages, emails, or other similar communications made between Government witnesses, or between Government witnesses and all third parties relating in any way to the charges filed against her, or the conduct underlying those charges.

She also requests:
- A statement from the same individuals as to whether any messages were deleted (intentionally or based on passage of a

certain amount of time), and if so, the reason for the deletion and their recollection of the substance of the deleted messages.
- Any notes related to the incident; and
- Any audio or video recordings relating to the incident, including before and after.

This the 8th day of December, 2025.

        Respectfully submitted,
        s/ Rob Heroy
        Bar No. 35339
        Attorney for Defendant
        Goodman Carr, PLLC
        301 S. McDowell St., Suite 602
        Charlotte, NC 28204
        Phone: 704-372-2770
        Fax: 704-372-6337
        E-mail: RHeroy@goodmancarr.net

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing Discovery Motion to the following parties via ECF:

Kenny Smith and Dan Ryan,, Assistant U.S. Attorneys, Criminal Division.

This the 8th day of December, 2025.


s/ Rob Heroy
W. Rob Heroy